## A. P. Niece v. The Territory of Oklahoma.

Filed Feb. 8, 1900.

1. Criminal Law—*Marriage of Divorced Persons—Bigamy.* Under the provisions of section 4551, of the Statutes of 1893, it is unlawful for either party to a divorce suit to marry any other person within six months from the date of the decree of divorcement, and every person marrying contrary to the provisions of this section is guilty of bigamy.

2. Bigamy—*Indictment for—Insufficient, When.* An indictment for bigamy under section 4551, is insufficient where it fails to negative the fact that the alleged bigamous wife was *a person other than* the wife of the defendant at the time of the second marriage.

3. Same—*Statutes Governing Distinguished.* An indictment for bigamy under the provisions of section 2181 of the Criminal Code, must allege that the defendant had a former wife still living at the date of the second marriage. But, under the provisions of section 4551, it is not necessary for the indictment to contain such an allegation.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, District Judge.*

*H. R. Thurston* and *D. T. Jarvis,* for plaintiff in error.

*Harper S. Cunningham, Attorney General,* for defendant in error.

Opinion of the court by.

Hainer, J.: The appellant, A. P. Niece, was indicted, tried and convicted under the provisions

of section 4551, of the Statutes of 1893, for the crime of bigamy, in the district court of Logan county, and was sentenced to serve a term of one year in the territorial penitentiary at Lansing, Kansas, and appeals.

The first error assigned and urged by counsel for the plaintiff in error is that the indictment does not state facts sufficient to constitute a public offense under the laws of this Territory.    This question was raised by objecting to the introduction of testimony on behalf of the Territory upon the trial, and a motion in arrest of judgment.    The objection to the introduction of testimony, as well as the motion in arrest of judgment, were overruled by the court, and exception saved by the defendant.

The indictment in this case reads as follows, (omitting caption):

"The grand jurors, duly summoned, chosen, empaneled, sworn and charged at the November term, aforesaid, of said district court, within and for the body of Logan county, Oklahoma, to inquire into and true presentment make of all public offenses against the Territory of Oklahoma, committed or triable within the county of Logan, in said Territory, in the name and by the authority of the Territory of Oklahoma, upon their oaths, present: That one A. P. Niece, late of the county of Logan, on the 13th day of February, in the year one thousand, eight hundred and ninety-nine, in the said county of Logan, then and there being, did, on said thirteenth day of February, A. D. one thousand eight hundred and ninety-nine, institute in the district court of the county of Logan, which court then and there had jurisdiction in the premises, an action against one Anna L. Niece, who was then and there the lawful wife of the

said A. P. Niece, by which said action the said A. P. Niece then and there sought to procure a decree of divorcement, dissolving and setting aside the bonds of matrimony then existing between the said A. P. Niece and the said Anna L. Niece; and that afterwards, to-wit:    On the twenty-eighth day of March, A. D. one thousand eight hundred and ninety-nine, a decree of divorcement was duly rendered in said action by said district court of Logan county, so instituted as aforesaid by said A. P. Niece, against said Anna L. Niece, which said decree was dated on the twenty-eighth day of March, A. D. one thousand eight hundred and ninety-nine, by which said decree of divorcement the bonds of matrimony theretofore existing between said A. P. Niece and Anna L. Niece were annulled and set aside; and that afterwards, to-wit: On the thirteenth day of May, A. D. one thousand eight hundred and ninety-nine, and in the said county of Logan, and within six months from the date of the decree of divorcement aforesaid, the said A. P. Niece, then and there being, did then and there unlawfully, wilfully and feloniously, marry and take to wife one N. J. Overman, and to her, the said N. J. Overman, was then and there married, within six months from the date of the decree of divorcement as aforesaid, contrary to the statute in such case made and provided, and against the peace and dignity of the Territory of Oklahoma."

This indictment was drawn under `the provisions of section 4551 of the Statutes of 1893, which reads as follows:

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of the party for whose fault it was granted in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party. Every judgment of divorcement granted by the district

court shall be final and conclusive, unless appealed
from within the time and in the manner herein pro-
vided. ' A party desiring to appeal from a judgment
granting a divorce, must, within ten days after such
judgment is rendered file a written notice in the office of
the clerk of such court, duly entitled in such action, stat-
ing that it is the intention of such party to appeal from
such judgment; and unless such notice be filed no appeal
shall be had or taken in such cause; if notice be filed as
aforesaid, the party filing the same may commence pro-
ceedings in error for the reversal or modification of such
judgment at any time within four months from the date
of the decree appealed from, and not thereafter; but,
whether a notice be filed as herein provided, or not, or
whether proceedings in error be commenced as herein
provided, or not, it shall be unlawful for either party to
such divorce suit to marry any other person within six
months from the date of the decree of divorcement; and
if notice be filed and proceedings in error be commenced
as hereinbefore provided then it shall be unlawful for
either party to such cause to marry any other person
until the expiration of thirty days from the day on which
final judgment shall be rendered by the appellate court
on such appeal; and every person marrying contrary to
the provisions of this section shall be deemed guilty of
bigamy, and such marriage be absolutely void."

It will be observed that the indictment charges that,
"said A. P. Niece, then and there being, did then and
there unlawfully, wilfully and feloniously, marry and
take to wife one N. J. Overman, and to her, the said
N. J. Overman, was then and there married within six
months from the date of the decree of divorcement."

The section of the statute under which said indict-
ment was drawn expressly provides that, "it shall be
unlawful for either party to such divorce suit to marry
any other person within six months from the date of

the decree of divorcement." Hence it is obvious that the
words, "to marry any other person" are a material aver-
ment of the indictment.    The indictment should have
negatived the fact that the said N. J. Overman was not
the former wife of the defendant.

In *United States v. Cook*, 17 Wall. 538, it was held
that offenses created by statute, as well as offenses at
common law, must be accurately and clearly described
in an indictment, and if they cannot be, in any case,
without an allegation that the accused is not within an
exception contained in the statute defining the offense,
it is clear that no indictment founded upon the statute
can be a good one which does not contain such an allega-
tion, as it is universally true that no indictment is suffi-
cient, if it does not accurately and clearly allege all the
ingredients of which the offense is composed.

With rare exceptions, offenses consist of more than
one ingredient, and in some cases of many, and the rule
is universal that every ingredient of which the offense
is composed must be accurately and cleary alleged in
the indictment, or the indictment will be bad, and may
be quashed on motion, or the judgment may be arrested,
or be reversed on error.

In *Rice v. State*, 38 S. W. Rep. 601, the court of crim
inal appeals of Texas, under a statute providing that.
"Rape is the carnal knowledge of a female under the age
of fifteen years, other than the wife of the person," it
was held that an indictment was fatally defective which
failed to negative the fact that the female was the wife
of the defendant.    In the course of the opinion, the court
said:

"It will be seen that the words, 'other than the wife of the person,' occur in the body of the enacting clause. The offense cannot be read without reading this. It does not occur in any proviso or distinct substantive clause, but is a part of the act itself, and, under the rule heretofore laid down, the indictment should negative the fact that the alleged injured female was the wife of the defendant. Of course, it is best that this negation be by direct and positive averment. However, there may be cases in which such negation might otherwise be set out by the pleader; but, if it is attempted, the allegation should be so certain as to exclude the idea which is intended to be negatived in the statute. As applied to this case, the allegation, if not of a direct and positive character, must show by averment in some way, to a certainty, that the injured female was not the wife of the defendant; that is, it must absolutely exclude the idea that she was his wife. It may be contended that the use of another name than that borne by the defendant sufficiently negatives the idea that she was his wife. There is nothing in our statute requiring or compelling the wife to take or assume the name of her husband. While this is generally the case, yet, the wife might retain her own name. She might be married to the defendant, and still be known by her maiden name, or some other name than his. It is said the husband, being the head of the family, the wife and children adopt his family name,—by custom, the wife is called by the husband's name; but whether marriage shall work any change of name at all is, after all, a mere question of choice, and either may take the other's name, or they may join their names together."

Under the provisions of our statute rape is defined as follows: "Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator," etc.

In construing this statute in *Young v. Territory*, 58 Pac. 724, this court held that an indictment for assault

with intent to commit the crime of rape should contain
the averment that the female assaulted was not the wife
of the person accused of the assault.

Applying these well settled principles to the case under
consideration, we are clearly of the opinion that the
indictment is insufficient, for the reason that it fails to
negative the fact that the said N. J. Overman was a
person other than Anna L. Niece, the wife of the said
defendant, at the time of the second marriage.

It is also contended by the plaintiff in error that the
indictment is insufficient for the reason that it fails to
charge that the defendant, A. P. Niece, had a former
wife living at the time of the second marriage. We
think that this contention is untenable. Bigamy is a
statutory, and not a common law crime. It was not
an offense at common law to marry a second time dur-
ing the life of the first husband or wife, but it was a
canonical offense. Bigamy, according to the canons,
consisted in marrying two virgins successively, one after
the death of the other, or once marrying a widow.
(4 Blackstone Com. 163.)

Bigamy, says Wharton, in his work on Criminal Law,
is committed by a party, who, when legally married to
one person, marries another. (2 Wharton on Crim. Law,
10th Ed., sec. 1682.)

Bishop in his work on Statutory Crimes, section 577,
says: "The crime of bigamy consists of a formal enter-
ing into of a marriage while a former one remains un-
dissolved."

Under section 2181, of the Statutes of 1893, of this
Territory, bigamy is defined as follows: "Every per-

son who, having been married to another who remains
living, marries any other person except in the cases
specified in the next section, is guilty of bigamy"

But, under the provisions of section 4551 of our stat-
ute, a new and distinct crime was created. The punish-
ment in the two instances are also different. Each is a
separate and independent crime in itself. And hence,
an indictment drawn under section 2181 of the crimes
act must contain an averment to the effect that the
former husband or wife was living at the time of the
second marriage, as it is one of the material elements
of the crime.

But, under the provisions of section 4551, it is not
necessary for the indictment to contain such an alle-
gation.

The case of *Pritchard v. People*, 36 N. W. Rep. 103,
cited by counsel for plaintiff in error, is not applicable
to the case under consideration, for the reason that the
indictment in that case was drawn under a statute which
expressly provided that, "whoever, having a former hus-
band or wife living, marries any other person, or con-
tinues to cohabit with such second husband or wife in
this state, shall be deemed guilty of bigamy." The de-
cision turned on the question that the indictment only
contained an allegation of the fact of knowledge on the
part of Pritchard, and not an allegation of the fact that
the former wife was still living. This decision would
be applicable to section 2181, but is wholly inapplicable
to section 4551.

The authorities uniformly hold under our modern
code pleading that the indictment is sufficient which

states the offense in the terms and language of the statute creating such offense, in a clear and concise manner. It is manifest that under section 2181 of the crimes act, it devolves upon the prosecution to aver in the indictment and prove upon the trial that at the time of the second marriage the husband or wife was still living. On the other hand, it clearly appears from the language of section 4551, that such an averment is not a material element of the offense, and hence it is not necessary to allege such fact and prove it upon the trial of the cause. It must, therefore, follow, under the provisions of this section of our statute, it is wholly a matter of defense, that at the time of the defendant's second marriage his former wife was not living, and the burden of proof rests upon the defendant to establish such fact.

Under the provisions of section 4553 of our Statutes of 1893, a decree of divorce does not become absolute and take effect until the expiration of six months from the date when judgment was rendered in the cause.

The court of appeals of Kansas, in construing a statute that is identical to ours has recently held that a decree of divorcement does not become final and operate as a dissolution of the marriage contract until the expiration of six months from the date of the rendition thereof, and the parties thereto are not single or unmarried persons until such decree becomes final and absolute. (*Blush v. State*, 46 Pac. 185.)

The court, in discussing this subject, in the course of the opinion said: "Our statute expressly declares that the decree does not become absolute, or take effect, until the expiration of six months from the date of its rendi-

tion. It not only makes it unlawful for the parties to marry during that time, but it declares that a marriage so contracted shall be absolutely void. During that six months, therefore, neither of the parties to the decree of divorce are unmarried persons. As we have said, neither of them could contract marriage within that time, and if they did the marriage would be void, and in the eyes of the law they are still married. The decree is not absolute at the time of its rendition. It is merely a decree *nisi*, subject to the future order of the court, and to be affected by contingencies that might arise within the six months."

And it has been held by courts of high reputation that until the divorce is absolute the marriage is in full force. (5 Am. and English Enc. of Law, 838; *Wales v. Wales*, 119 Mass. 89; *Wilhite v. Wilhite*, 41 Kans. 154, 21 Pac. 174.)

The supreme court of Kansas in *Wilhite v. Wilhite*, has adopted this doctrine, and held in that case in construing the Oregon statute, (Hill's Am. Laws, sec. 503,) which provides: "A decree declaring a marriage void shall have the effect to terminate such marriage, as to both parties, except that neither party shall be capable of contracting marriage with a third person, and if he, or she, does so contract, shall be liable therefor as if such decree had not been given, until the suit has been heard and determined on appeal, and if no appeal be taken, the expiration of the period allowed by the code to take such appeal,"—that under that law a decree of divorce does not absolutely terminate the marriage relation, nor entirely free the parties from its obligation

and liability, until the expiration of the time allowed in which to take an appeal. The same construction has been given to a similar statute in the then Territory of Washington, in the case of *Smith v. Fife*, 30 Pac. 1059.

Hence under the provisions of section 4551, of the Statutes of 1893, it is unlawful for either party to a divorce suit to marry any other person within six months from the date of the decree of divorcement, and every person marrying contrary to the provisions of this section is guilty of bigamy.

Other errors are assigned by the plaintiff in error, but as the cause must be reversed it will not be necessary to consider them here.

For the reasons heretofore stated, the judgment of the district court must be reversed and the cause remanded with directions to sustain the motion in arrest of judgment and proceed in accordance with the views herein expressed.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.