[Civ. No. 5275.   Fourth Dist.   Jan. 7, 1957.]

Estate of LUELLA J. SANDERS, Deceased. PATRICIA J. RADICE, Appellant, v. EMORY V. SANDERS, as Administrator With Will Annexed, Respondent.

David N. M. Berk for Appellant.

Wallace P. Rouse for Respondent.

COUGHLIN, J. pro tem.*—This is an appeal from an order dismissing a petition seeking the removal of Emory V. Sanders, as administrator with the will annexed of the estate of Luella J. Sanders, deceased. Letters of administration had been issued to Emory as the surviving spouse of decedent. Luella died testate, leaving a will executed prior to her marriage which made no provision for Emory, and named an executor who predeceased her. The petition for removal alleged that the marriage of Emory and Luella was void, because of a prior existing marriage.

At the hearing of the petition in question it was established that Emory had been married to Clara I. Sanders; that he was divorced; "that the divorce was entered in Portland, Oklahoma, on the 24th day of April, 1951"; that he was a resident of California "in the month of April, 1951" and resided therein continuously thereafter; and that he and Luella were married in Yuma, Arizona on August 18, 1951, and lived together as husband and wife until her death on March 31, 1955.

Appellant contends that the Oklahoma divorce did not terminate the marriage relation between Emory and Clara until six months after the decree was entered, and as he married Luella within six months after this divorce the later marriage was void. This contention is based on certain provisions of the Oklahoma statutes which, among other things, declare that it shall be unlawful for either party to a divorce to marry another person within six months after the decree is entered, and require that such a decree recite that it does not become

*Assigned by Chairman of Judicial Council.

absolute and take effect until the expiration of six months from the time it is rendered.

■ The effect of the Oklahoma decree of divorce is governed by the laws of that state (*Means* v. *Means,* 40 Cal.App. 2d 469, 473 [104 P.2d 1066]; *Estate of Winder,* 98 Cal.App. 2d 78, 87 [219 P.2d 18].)

■ In the case of *Plummer* v. *Davis,* 169 Okla. 374 [36 P.2d 938], the Supreme Court of Oklahoma held that the marriage of a divorced person within six months after the rendition of a decree of divorce, the marriage and divorce both occurring in that state, was voidable and not void. This decision, of necessity, was based upon the conclusion that the marriage which was the subject of the divorce action had been terminated by the decree therein, otherwise the subsequent marriage within the prohibited period would have been void as a plural marriage (*Whitney* v. *Whitney,* 192 Okla. 174 [134 P.2d 357]). In its opinion the court places particular emphasis upon the decision in the case of *Conn* v. *Conn,* 2 Kan.App. 419 [42 P. 1006], which interpreted the effect of a Kansas statute substantially identical with the Oklahoma statute wherein it was said: ". . . our statute simply declares that it shall be unlawful for either party to marry within six months after the decree is entered. It does not in terms pronounce them incapable of entering into the marriage relation within that period, nor does it declare void a marriage solemnized in violation of the prohibition of the statute." With respect to the requirement that the decree of divorce should recite certain restrictions upon its effectiveness, the Oklahoma court said: "In *Brown* v. *Capps et al.,* 164 Okla. 91 [22 P.2d 1008] this court held in Section 2 of the syllabus 'Section 676, O.S. 1931 (512 C.O.S. 1921), which provides that "every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said date," must be considered to apply only to that portion of section 674, O.S. 1931, which relates to appeals and remarrying within six months following the date upon which the divorce is granted.' "

In two prior Oklahoma decisions the sole issue for determination was the effect of the decree of divorce upon the existing marriage. No subsequent marriage was involved. In each instance the court held that the granting of a decree of divorce dissolved the marriage (*In re Smith,* 2 Okla. 153 [37 P. 1099]; *Yeats* v. *State,* 30 Okla. Crim. 320 [236 P. 62]).

A third prior decision, *Harvey* v. *State*, 31 Okla. Crim. 299 [238 P. 862, 863, 51 A.L.R. 321], considers the effect of the Oklahoma divorce laws and states: "Under this statute the decree of divorce is sufficient to dissolve the marriage tie at the time it is rendered, but there is an inhibition in the nature of a penalty on a marriage by the parties with any third person within 6 months from the date of the decree."

In two other prior decisions, the Oklahoma court considered the effect of the statutes of that state on the marriage of a person divorced in that state, which occurred within six months after the rendition of the divorce decree. (*Niece* v. *Territory,* 9 Okla. 535 [60 P. 300] ; *Atkeson* v. *Sovereign Camp, W.O.W.,* 90 Okla. 154 [216 P. 467, 32 A.L.R. 1108].) At the time the divorces in these cases were granted, the statutes provided that any divorced person marrying within the six months' period "shall be *deemed* guilty of bigamy, and such marriage be *absolutely void.*" (Italics ours.) This provision was stricken from the statutes in 1925. In *Niece* v. *Territory, supra,* the appellant had been charged with bigamy; the remarriage occurred in the state of Oklahoma; and the court held that under "the provisions of Section 4551 of the Statutes of 1893, it is unlawful for either party to a divorce suit to marry any other person within six months from the date of the decree of divorcement, and every person marrying contrary to this section is guilty of bigamy." In *Atkeson* v. *Sovereign Camp, W.O.W., supra,* the plaintiff sued for insurance benefits as the wife of a deceased member of the defendant association; she and her husband, who was divorced in Oklahoma where both of them were domiciled, were married in Texas within six months after rendition of the divorce decree; and the court held that "the attempted marriage of Lee B. Atkeson to Mattie Atkeson, while the former was under the restrictions imposed by the laws of this state, *by making a temporary visit* to the state of Texas, was void, and that the said Mattie Atkeson can derive no rights nor base any claim therein in *the courts of this state.*" (Italics ours.) In referring to these two decisions the court in *Yeats* v. *State,* 30 Okla. Crim. 320 [236 P. 62, 64], makes this pertinent observation: "In a few cases the courts say, or by loose language intimate, that the marriage relation between the parties does not actually terminate until the end of that period (the six month period). This discrepancy also appears in some of the Oklahoma decisions." The opinion in *Yeats* v. *State, supra,* recognizes the distinction between cases involving an

application of the Oklahoma divorce laws to a second marriage, and those considering the effect of an Oklahoma divorce decree on the marital status of the parties named therein, and says: "It must, of course, be conceded that the defendant could not consummate a legal second marriage in this state within the 6-month period, but many of our sister states have held that one might do so in another state where the marriage and divorce laws of the latter contain no such prohibition. They so hold upon the theory that in effect within this state the marital relation is dissolved the moment the decree of divorce is rendered, and that the prohibition against remarriage is in the nature of a penalty which a sister state having a different policy will not enforce, so that within such a sister state a second marriage may be consummated within the 6-month period, valid in that state." It is noteworthy that in 1925 the Oklahoma statutes were amended to specifically provide that a marriage outside of the state during the prohibited period was unlawful and "deemed" bigamous. There would have been no need for the amendment if a decree of divorce had not dissolved the marriage forthwith as a subsequent marriage in any state, during the existence of the prior undissolved marriage, would have been unlawful and bigamous.

The courts of other states, in construing the Oklahoma statutes or others similar thereto, have held that a marriage which is the subject of a divorce action under those statutes, terminates upon the rendition of the decree of divorce, even though it is unlawful for either party to the action to marry any other person within six months. (*Green* v. *McDowell,* 210 Mo.App. 517 [242 S.W. 168] ; *Bauer* v. *Abrahams,* 73 Colo. 509 [216 P. 259] ; *Durland* v. *Durland,* 67 Kan. 734 [74 P. 274, 276, 63 L.R.A. 959] ; *In re Troemper's Estate,* 160 Kan. 464 [163 P.2d 379, 382].)

It is our opinion that the marriage between Emory V. Sanders and Clara I. Sanders was dissolved upon the rendition of the divorce decree by the Oklahoma court on April 24, 1951.

The only remaining question for decision is whether the Arizona marriage of Emory and Luella was valid in California. ▮ "Ordinarily, the law of the place of marriage controls the question of its validity." (*Colbert* v. *Colbert,* 28 Cal.2d 276, 280 [169 P.2d 633].) ▮ The courts of Arizona have followed the rule holding that statutes which prohibit the remarriage of divorced persons within a specified time after the entry of a decree which terminates the marriage relation

have no extraterritorial effect. (*Horton* v. *Horton,* 22 Ariz. 490 [198 P. 1105].) This, also, is the law in California. (*Estate of Wood,* 137 Cal. 129 [69 P. 900] ; *People* v. *Woodley,* 22 Cal. App. 674, 681 [136 P. 312].) Under these rules the marriage of Emory and Clara was valid.

In her reply brief appellant states that she "is leaning heavily upon the case of *Means* v. *Means,* 40 Cal.App.2d 469 [104 P.2d 1066]" which considered the effect of a decree of divorce obtained in Wisconsin. The ground for appellant's reliance on the cited case is the similarity between certain provisions of the Wisconsin divorce statutes and those of the Oklahoma statutes. The courts of Wisconsin have held that under the statutes of that state a divorce decree is not effective until the expiration of one year from the granting of such decree. However, the laws of Oklahoma and not the laws of Wisconsin govern the decision in the instant case.

The order appealed from is affirmed.

Barnard, P. J., and Griffin, J., concurred.