[Civ. No. 44383. Second Dist., Div. Five. Oct. 28, 1974.]

Estate of ALFRED GRIMBLE, Deceased.
HELEN ANN KELLOGG, Petitioner and Appellant, v.
BEVERLY JEAN GREGOIRE, Objector and Respondent.

## Counsel

Rudolph Pearl for Petitioner and Appellant.

Sid Mannheim for Objector and Respondent.

## Opinion

**LORING, J.**\*—Helen Ann Kellogg (Kellogg) filed a petition to "Determine Entitlement to Distribution of Estate" under the provisions of Probate Code section 1080 (commonly called proceedings to determine heirship) seeking a decree that she was the sole heir-at-law of Alfred Grimble (aka Alfred E. J. Grimble) (Grimble) who died intestate, a resident of Los Angeles County, February 1, 1972. In her petition Kellogg alleged that the facts in support of her claim to be entitled to the entire estate were:

"1. Decedent married Bertha Williams, on May 31, 1921, in Rochester, New York, and divorced her in 1940.

"2. Petitioner was born *of this marriage* on May 20, 1933." (Italics added.)

In her statement of interest in opposition to Kellogg's petition Beverly Jean L. Gregoire (Gregoire) alleged that Kellogg "is not the daughter of Alfred E. J. Grimble, deceased." Gregoire then alleged that the known heirs of the decedent were three first cousins (one of whom was Gregoire) each entitled to 25 percent interest, and the widow and four children of a deceased first cousin. After nonjury trial the court signed findings of fact and conclusions of law against Kellogg's claim and entered a decree denying the claim of Kellogg and providing that the determination of the identity of the heirs-at-law was left to further determination on petition to determine heirship or petition for distribution on final account. The decree was modified to provide that the denial was "with prejudice" and the findings were modified to find that "Kellogg is not the daughter of decedent and therefore is not the heir of decedent." Kellogg appeals *on the judgment roll only* from the decree, as modified.

### Contentions

Appellant contends:

I If California law applies, a collateral heir (Gregoire) has no standing

---

\*Assigned by the Chairman of the Judicial Council.

to attack the presumed legitimacy of Kellogg as Grimble's daughter and therefore the court should have found that Kellogg was the sole heir and entitled to the entire estate.

II California law governs the issue of the legitimacy of Kellogg as Grimble's daughter.

## FACTS

As already noted this case is presented to us on the judgment roll alone. In its findings the court found, inter alia: that decedent Grimble married Bertha Williams in Rochester, New York, May 31, 1921, that on December 21, 1921, they "were legally separated by judicial decree 'from bed & board' in Rochester, New York," that "sometime thereafter" Grimble moved to California, that Bertha Grimble gave birth May 20, 1933, in Rochester, New York, to "Baby Girl Grimble, although said child was known during infancy, in public schools & at the time of her marriage as DeMENT." That Baby Girl Grimble is Kellogg; that on February 1, 1936, Bertha Grimble married Daniel Dement in Williamson, New York; that on July 8, 1938, Grimble filed for divorce from Bertha Grimble in Los Angeles County and a final judgment of divorce was entered on January 23, 1940. The court expressly found "that Helen Ann Kellogg is not the natural child of decedent. The testimony of Helen Ann Kellogg & her mother Bertha Dement not being credible." The court concluded, inter alia, that Kellogg "is not the daughter and therefore not the heir of decedent."[1]

In a minute order dated November 5, 1973, which is included in the record on appeal, the court in announcing its intended decision also said, inter alia; "The evidence and testimony of petitioner and her mother that petitioner is the daughter of decedent is not credible."

## DISCUSSION

■ Since this is an appeal on the judgment roll alone we are required under established principles governing appeals to conclusively pre-

---

[1]The entire conclusions were as follows:

"1. That the Law of New York State governs the issue of whether Petitioner, Helen Ann Kellogg is the child of decedent.

"2. That the Law of New York provides for a rebuttable presumption of legitimacy of a child born during marriage.

"3. That Contestant Beverly Jean L. Gregoire, has standing to contest the legitimacy of Helen Ann Kellogg.

"4. That the New York presumption of legitimacy has been rebutted.

"5. That Helen Ann Kellogg is not the daughter and therefore not the heir of decedent.

"Let Judgment be entered accordingly."

sume that there was substantial evidence to support the findings of the trial court and the judgment. In *Kompf* v. *Morrison*, 73 Cal.App.2d 284, 286 [166 P.2d 350], the court said: ". . . It is elementary and fundamental that on a clerk's transcript appeal the appellate court must conclusively presume that the evidence is ample to sustain the findings, and that the only questions presented are as to the sufficiency of the pleadings and whether the findings support the judgment."

In fact, Kellogg argues in her opening brief (p. 2) that "the only matters relevant to this review are the PETITION of Appellant, the STATEMENT of Respondent, the FINDINGS as modified, the DECREE as modified, and the Letters of Administration." In her closing brief (p. 1) she took Gregoire to task for going outside of the "record" by calling attention to some of the evidence.

In *Mathews* v. *Hornbeck*, 80 Cal.App. 704 [252 P. 667] (a paternity case) the court at page 706 said: ". . . There is a clear and substantial conflict in the evidence relating to the issues in question on this appeal and therefore the findings of the trial court are conclusive." This would seem to be true, a fortiori, where the appeal is on the judgment roll alone.

Kellogg contends that she was entitled to the benefit of Evidence Code section 661,[2] and that under Evidence Code section 661 collateral heirs (such as Gregoire) may not question her standing. From this premise Kellogg concludes that the court was therefore legally required to find that she was the daughter of Grimble and the court had no power or authority to reach any other result. This non sequitur disregards two fundamental principles: (1) that as petitioner, Kellogg, had the burden of proof—she was required to present some "credible" evidence in support of her claim. Here, the court found that her evidence (whatever it may have been) was not "credible;" (2) before she can claim the benefits of Evidence Code section 661 she must present "credible" evidence that she comes within the scope of section 661. In her briefs on appeal Kellogg apparently assumes that the trial court denied her the benefits of Evidence Code section 661. Section 661 is a rule of evidence. Since this is an appeal on the judgment roll alone, we have no basis for determining upon what evidence the court based its findings. We are required to presume that all of its rulings regarding evidence were legally correct since no

[2]Evidence Code section 661 reads: "A child of a woman who is or has been married, born during the marriage or within 300 days after the dissolution thereof, is presumed to be a legitimate child of that marriage. This presumption may be disputed only by the people of the State of California in a criminal action brought under Section 270 of the Penal Code or by the husband or wife, or the descendant of one or both of them. In a civil action, this presumption may be abutted only by clear and convincing proof."

record is presented of any claimed error. We therefore proceed to a consideration of Evidence Code section 661 on the assumption that the court properly extended the benefits thereof to Kellogg if she was entitled to them.

■ At the outset we are confronted with the problem of interpreting section 661 in the light of the court's finding that on December 21, 1921, 12 years before the birth of Kellogg on May 20, 1933, Kellogg's mother, Bertha Grimble and Alfred Grimble "were legally separated by judicial decree 'from bed & board' in Rochester, New York." The precise question presented is whether or not a man and woman are "married" *within the meaning of Evidence Code section 661* if they have been legally separated by "judicial decree from bed and board." The Law Revision Commission's comment on section 661 says: "Section 661 *restates* and supersedes the presumption found in Sections 193, 194, and 195 of the Civil Code and *subdivision 31 of Code of Civil Procedure Section 1963 as these sections have been interpreted by the courts.*" (Italics added.)

This note indicates, inter alia, that by adopting section 661 it was intended to "restate" Code of Civil Procedure section 1963, subdivision 31. That section read: "31. That a child born in lawful wedlock, *there being no divorce from bed and board*, is legitimate." (Italics added.)

We therefore interpret the word "married" appearing in section 661 as meaning the equivalent of "lawful wedlock, there being no divorce from bed and board." The word "divorce" may be used in a narrow sense of terminating the technical legal bonds of matrimony or in the broader sense including a legal separation which terminates the actual physical union of married people and terminates the legal rights incident to that physical relationship. (See 27A C.J.S., Divorce, § 1, p. 15.) As used in Code of Civil Procedure section 1963, subdivision 31, the word divorce is obviously used in its broadest sense. As used in section 661 therefore, the word "married" means a marriage which has not been terminated by "divorce" used in its broadest sense. The court here found that Alfred Grimble and Bertha Grimble "were legally separated by judicial decree 'from bed & board.'" The findings of the trial court therefore affirmatively demonstrate that Kellogg did not come within the purview of section 661 since she was not the child of a woman who is "married" or who was "married" at the time of birth or within 300 days of such birth. This conclusion likewise disposes of Kellogg's argument that Gregoire has no standing to "dispute" the presumption created by section 661, i.e., to contest her petition. Before the court could determine whether or not Gregoire had standing it was first required to determine whether Kellogg

came within the provisions of section 661. Since it inferentially found that Kellogg did not come within the scope of section 661 the limitations of that section regarding the right to dispute the presumption had no relevance. Gregoire did not attempt to rebut the presumption. Her effort was to show that the presumption did not exist at all.

We have carefully studied the recent decision of *In re Lisa R.* * (Cal.App.). We have concluded that that decision is not controlling here since there was no factual or legal basis there for the court to conclude that Patricia M. was not "married" in the sense that we find that term was used in section 661. In *In re Lisa R., supra,* the child (whose paternity was disputed) was without dispute the issue of a "married" woman. In that case there was no decree of "divorce" (used in its broadest sense). Here we hold that the trial court found (properly) that Kellogg was not the issue of a "married" woman since Bertha and Alfred were not "married" within the meaning of section 661 at the time of Kellogg's conception in 1932, or her birth in 1933. Even this limited judgment roll record is clear that Alfred Grimble then had neither the legal right of physical access, nor actual, in fact, physical access to the mother of Kellogg at any time remotely close to the time of Kellogg's conception. Since Alfred was not "married" to Bertha in 1932, the trial court correctly concluded (as it impliedly did) that Kellogg did not come within the purview of section 661 since she did not prove by "credible" evidence that she was the child of a "married" woman born during the "marriage" or within 300 days after termination of the "marriage." No court has yet held that there can be a 12-year period of gestation. This court will not be the first to do so.

Included in the record on appeal is a brief filed by Gregoire's counsel in the court below which alludes to evidence introduced at trial that indicates that the natural father of Kellogg was Daniel Dement[3] together with evidence that Daniel Dement had legitimated Kellogg under the laws of New York.[4] Since this is an appeal on the judgment roll alone we cannot consider such evidence. ▇ However, on an appeal on the judgment roll we are entitled, and in fact required, to presume the existence of all legitimate and reasonable inferences necessary to support the findings of the

---

*Reporter's Note: A hearing was granted by the Supreme Court on October 10, 1974. The opinion of that court is reported in 13 Cal.3d 636 [119 Cal.Rptr. 475, 532 P.2d 123].

[3]The evidence included the birth record of Kellogg which was jointly signed by Bertha Grimble and Daniel Dement declaring that Daniel Dement was the father of Kellogg.

[4]This evidence included a marriage record that Daniel Dement and Bertha Grimble had married and evidence that Kellogg had been received into the home as Dement's child and had been known as Dement until her marriage.

trial court. (*Blake* v. *Blake*, 135 Cal.App.2d 218 [286 P.2d 948].) If there was evidence that Kellogg was the natural child of a man other than the decedent Grimble, and if there was evidence that Kellogg had been legitimated by her natural father, such evidence would support a finding that Kellogg was not the child of Grimble or his legal heir. If there is one immutable law of nature it must be that no person can have two fathers. Legitimation is determined by the law of the natural father's residence. (*Estate of Lund*, 26 Cal.2d 472 [159 P.2d 643, 162 A.L.R. 606]; *Blythe* v. *Ayres*, 96 Cal. 532 [31 P. 915]; 10 C.J.S., Bastards, § 8, p. 51.) A legitimated child is an heir of its natural father (*Estate of Young*, 132 Cal.App.2d 25 [281 P.2d 368]).

We next consider Kellogg's contention that we are required to reverse because the court drew erroneous conclusions of law.[5] We have previously set forth the conclusions in detail in the margin. We interpret conclusion No. 1 ("the law of New York governs the issue of whether petitioner Helen Ann Kellogg is the child of decedent") to mean that the law of New York governs the interpretation and legal effect of the "judicial decree 'from bed & board' " which was rendered by the court in Rochester, New York. See *Monroe* v. *Superior Court*, 28 Cal.2d 427 [170 P.2d 473], where the court discusses at page 431 the legal effect of a New York decree of limited divorce from bed and board or legal separation, and states: ". . . A limited divorce places the relationship of the parties beyond the reach of either of them alone. They are still married in the sense that neither may remarry, but they are no longer married in the sense that either can give the other the choice of resuming the marital relation or being guilty of desertion. *As between themselves the parties are in the same position as they are after a decree of absolute divorce.*" (Italics added.) In this legal conclusion the court was correct. The legal effect of a foreign decree of divorce is determined by the law of the place where it was rendered. (*Comfort* v. *Comfort*, 17 Cal.2d 736 [112 P.2d 259]; *Jones* v. *Jones*, 182 Cal.App.2d 80 [5 Cal.Rptr. 803]; *Estate of Sanders*, 147 Cal.App.2d 450 [305 P.2d 655]; *Smith* v. *Smith*, 115 Cal.App.2d 92 [251 P.2d 720]; *Morrow* v. *Morrow*, 40 Cal.App.2d 474 [105 P.2d 129]; *Means* v. *Means*, 40 Cal.App.2d 469 [104 P.2d 1066].) As so interpreted by the law of the place of rendition, it is en-

---

[5]In this connection we disregard respondent's suggestion that counsel for Kellogg was guilty of some impropriety in submitting her own findings and conclusions for signature after the court had instructed Gregoire's counsel to do so and when he was in the process of doing so. Inasmuch as the trial court did not see fit to vacate and set aside such findings for such alleged impropriety we are bound by the findings and conclusions which are included in the record on appeal.

titled to full faith and credit (*Gough* v. *Gough*, 101 Cal.App.2d 262 [225 P.2d 668]).

It is unquestionably true that California law governs the right to succeed to a California estate. But the first question which the court was confronted with was the effect of the New York decree under New York law.

With reference to conclusion No. 2 ("the law of New York provides for a rebuttable presumption of legitimacy of a child born during marriage") the court may have been in technical error in referring to a New York rule of evidence since California proceedings are governed by California law of evidence. But inasmuch as such conclusion does not indicate that the New York rule referred to was in any respect different from California evidence law on the same subject, particularly as set forth in Evidence Code section 661, we fail to see where any prejudice resulted. Furthermore, the reference to a rule of evidence is no proper part of the conclusions of law. The conclusions are required to deal only with the ultimate legal issues which in this case were: is Kellogg the child of Alfred Grimble? Is Kellogg his heir-at-law? How the court arrives at an answer to these questions is basically a problem of evidence and we are not concerned with evidence questions on this appeal.

With reference to the court's conclusion No. 3 (that "the contestant Jean L. Gregoire has standing to contest the legitimacy of Helen Ann Kellogg") as we have already noted, a preliminary question which arises incident to section 661 is whether or not a claimant who invokes section 661 comes within the purview of such section, i.e., whether or not such claimant is the issue of a "married" woman. If the claimant is not the issue of a "married" woman and therefore cannot invoke the benefits of section 661, then the limitations of that section regarding who may contest have no relevancy. The conclusion of the court that Gregoire had standing to contest whether or not Kellogg came within the provisions of section 661 was the counterpart of its conclusion that Kellogg did not come within the provisions of section 661, and was therefore technically correct, but wholly unnecessary as a conclusion of law.

Conclusion No. 4 (that "the New York presumption of legitimacy has been overcome") is likewise a conclusion on a rule of evidence or the weight of evidence which is not properly a conclusion of law and therefore it is not properly before us since on this appeal, as repeatedly stated, we are not confronted with any questions regarding rules of evidence.

The fifth conclusion (that Kellogg was not the daughter of Alfred

Grimble and therefore not an heir of decedent) was in reality the only necessary and appropriate conclusion since it legally flows from the court's finding No. 13 that the testimony of Kellogg and her mother Bertha Dement was not "credible" and its finding No. 12 that "Kellogg is not the natural child of decedent."

We think the following statement is particularly applicable to these conclusions: "However, despite their mention in C.C.P. 632, the conclusions of law are a relatively useless appendage. The important conclusion of law is the *judgment*. If the findings support the judgment it will be affirmed, regardless of whether the findings support the conclusions, or whether the conclusions of law are consistent or properly stated, or even if the conclusions are omitted entirely. (*Klein Norton Co.* v. *Cohen* (1930) 107 C.A. 325, 332, 290 P. 613 [inconsistent conclusions]; *Spencer* v. *Duncan* (1895) 107 C. 423, 427, 40 P. 549 [omitted conclusion]; *Delmuto* v. *Superior Court* (1932) 119 C.A. 590, 594, 6 P.2d 1007; *Rea* v. *Haffenden* (1897) 116 C. 596, 599, 48 P. 716 [no conclusions, only order for judgment]; *Robertson* v. *Bogert* (1955) 130 C.A.2d 639, 644, 279 P.2d 572; *Hunter* v. *Adams* (1960) 180 C.A.2d 511, 525, 4 C.R. 776, citing the text.)" (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 304, p. 3113; see also, 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 323, p. 3126.)

In conclusion, we cannot refrain from pointing out that in the final analysis what appellant is attempting to do on this appeal is, in effect, to attack evidentiary rulings under the guise of attacking certain conclusions of law without presenting the record of any portion of the oral proceedings to enable this court to properly rule on rulings by the trial court regarding evidence or the conduct of the proceedings. For all we now know from this record such evidence may have been received by stipulation or at best without objection. In our view this strategy not only imposes an undue burden on this court, it constitutes a disservice to the cause of justice.

We conclude that although some of the conclusions of law may be irrelevant and unnecessary, they are not prejudicial and the material findings do support the judgment.

The judgment (decree determining entitlement to distribution of estate) is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.